IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GREGORY NORWOOD,

    Plaintiff,                            No. CIV S-09-2929 LKK GGH P

  vs.

NANGANAMA, et al.,              ORDER &amp;
                                            FINDINGS AND RECOMMENDATIONS
    Defendants.

_____/

I. Introduction

       Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' May 6, 2010, motion to dismiss for failure to exhaust administrative remedies and failure to state a claim (Doc. 21). Plaintiff filed an opposition on June 3, 2010, and defendants filed a reply. Plaintiff also filed a sur reply on June 23, 2010, which defendants have filed a motion to strike (Doc. 29). Also pending is plaintiff's motion to appoint an expert dermatologist (Doc. 20).

II. Background

       This case is currently proceeding on the original complaint filed on October 21, 2009. Service is pending for several other defendants, but the served defendants bringing the instant motions are Dr. Nanganama and Dr. Raman. Plaintiff alleges that while housed at California State Prison - Sacramento (CSP-Sac), for approximately three weeks, Dr. Nanganama

provided inadequate medical care concerning plaintiff's skin condition and body bugs.  Plaintiff alleges that Dr. Raman also provided inadequate medical care for these same conditions while plaintiff was housed at California Substance Abuse Treatment Facility (SATF).

Dr. Nanganama moves for dismissal as plaintiff failed to exhaust administrative remedies and Dr. Raman moves for dismissal for plaintiff's failure to state a claim on which relief may be granted.

III. <u>Motion to Strike</u>

Defendants move to strike plaintiff's sur reply to the motion to dismiss.  As plaintiff is proceeding pro se, the undersigned will consider the extra filing.  Defendants' motion is denied.

IV. <u>Motion to Dismiss</u>

<u>Legal Standard</u>

<u>Exhaustion</u>

The Prison Litigation Reform Act of 1995 (PLRA) amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002).  Exhaustion is a prerequisite for all prisoner suits regarding the conditions of their confinement, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. <u>Porter</u>, 534 U.S. at 532.

Exhaustion of all "available" remedies is mandatory; those remedies need not meet federal standards, nor must they be "plain, speedy and effective." <u>Id</u>. at 524; <u>Booth v. Churner</u>, 532 U.S. 731, 740, n. 5 (2001).  Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. <u>Booth</u>, 532 U.S. at 741.  A prisoner "seeking only money damages must complete a prison administrative

process that could provide some sort of relief on the complaint stated, but no money." Id. at 734.[1]

A prisoner need not exhaust further levels of review once he has either received all the remedies that are "available" at an intermediate level of review, or has been reliably informed by an administrator that no more remedies are available. Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005). As there can be no absence of exhaustion unless some relief remains available, a movant claiming lack of exhaustion must demonstrate that pertinent relief remained available, whether at unexhausted levels or through awaiting the results of the relief already granted as a result of that process. Brown, 422 F.3d at 936-37.

The PLRA requires proper exhaustion of administrative remedies. Woodford v. Ngo, 548 U.S. 81, 83-84 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. Thus, compliance with prison grievance procedures is required by the PLRA to properly exhaust. Id. The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." Id. at 83-84.

The State of California provides its prisoners the right to appeal administratively "any departmental decision, action, condition or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). It also provides them the right to file appeals alleging misconduct by correctional officers and officials. Id. § 3084.1(e). In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal

---

[1] That the administrative procedure cannot result in the particular form of relief requested by the prisoner does not excuse exhaustion because some sort of relief or responsive action may result from the grievance. See Booth, 532 U.S. at 737; see also Porter, 534 U.S. at 525 (purposes of exhaustion requirement include allowing prison to take responsive action, filtering out frivolous cases, and creating administrative records).

on a 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the CDCR.  Barry v. Ratelle, 985 F.Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal.Code Regs. tit. 15, § 3084.5).  A final decision from the Director's level of review satisfies the exhaustion requirement under § 1997e(a).  Id. at 1237-38.

Failure to exhaust administrative remedies is an affirmative defense properly raised by a defendant in an unenumerated Fed. R. Civ. P.  Rule 12(b) motion.  Jones v. Bock, 549 U.S. 199, 216 (2007).  If the court concludes the prisoner has not exhausted non-judicial remedies, the proper remedy is dismissal of the claim without prejudice.  Wyatt v. Terhune, 315 F.3d 1108, 1119-1120 (9th Cir. 2003).  Defendants bear the burden of raising and proving non-exhaustion.  Id. at 1119.  The court may resolve any disputed material facts on the exhaustion issue by looking beyond the pleadings in deciding a motion to dismiss for failure to exhaust.  Id. at 1119-20.  No presumption of truthfulness attaches to a plaintiff's assertions associated with the exhaustion requirement.  See Ritza v. Int'l Longshoremen's and Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988).

### Failure to State a Claim

In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007).  "The pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."  Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S. Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S. Ct. 1843, 1849, reh'g denied, 396 U.S. 869, 90 S. Ct. 35 (1969). The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256, 114 S.Ct. 798, 803 (1994), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992). Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972).

The court may consider facts established by exhibits attached to the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986). The court need not accept legal conclusions "cast in the form of factual allegations." Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. See Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987).

Eighth Amendment

In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 299

(1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992) (on remand).  The requisite state of mind for a medical claim is "deliberate indifference."  Hudson v. McMillian, 503 U.S. 1, 6 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.  Indications that a prisoner has a serious need for medical treatment are the following:  the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.  See, e.g., Wood v. Housewright, 900 F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989).  McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court defined a very strict standard which a plaintiff must meet in order to establish "deliberate indifference."  Of course, negligence is insufficient.  Farmer, 511 U.S. at 835.  However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient.  Id. at 836-37.  Nor is it sufficient that a reasonable person would have known of the risk or that a defendant should have known of the risk.  Id. at 842.

It is nothing less than recklessness in the criminal sense – subjective standard – disregard of a risk of harm of which the actor is actually aware.  Id. at 837-42.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837.  Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  Id. at 847.  "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."  Id. at 842.  If the risk was obvious, the trier of fact may infer that a defendant knew of the risk.  Id. at 840-42.

1 However, obviousness per se will not impart knowledge as a matter of law.

2       Also significant to the analysis is the well established principle that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). However, a physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. Id.

      Additionally, mere delay in medical treatment without more is insufficient to state a claim of deliberate medical indifference. Shapley v. Nevada Bd. of State Prison Com'rs, 766 F.2d 404, 407 (9th Cir. 1985). Although the delay in medical treatment must be harmful, there is no requirement that the delay cause "substantial" harm. McGuckin, 974 F.2d at 1060, citing Wood v. Housewright, 900 F.2d 1332, 1339-40 (9th Cir. 1990). A finding that an inmate was seriously harmed by the defendant's action or inaction tends to provide additional support for a claim of deliberate indifference; however, it does not end the inquiry. McGuckin, 974 F.2d at 1060. In summary, "the more serious the medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff has established deliberate indifference on the part of the defendant." Id. at 1061.

      Superimposed on these Eighth Amendment standards is the fact that in cases involving complex medical issues where plaintiff contests the type of treatment he received, expert opinion will almost always be necessary to establish the necessary level of deliberate indifference. Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988). Thus, although there may be subsidiary issues of fact in dispute, unless plaintiff can provide expert evidence that the treatment he received equated with deliberate indifference thereby creating a material issue of fact, summary judgment should be entered for defendants. The dispositive question on this

summary judgment motion is ultimately not what was the most appropriate course of treatment for plaintiff, but whether the failure to timely give a certain type of treatment was, in essence, criminally reckless.

Discussion

### Dr. Nanganama

Defendant Nanganama contends that plaintiff failed to properly exhaust the claims against him. Nanganama treated plaintiff when plaintiff was housed CSP-Sac between October 23, 2007 and November 15, 2007. Based on plaintiff's complaint, it only appears that Nanganama saw plaintiff once and plaintiff contends that the doctor only treated plaintiff's skin infection but not his body bugs.

Defendant's motion to dismiss contains several declarations and exhibits that contend that plaintiff filed no timely inmates appeals regarding Nanganama's treatment. The only appeal mentioning Nanganama's treatment was an appeal filed July 28, 2009, more than 18 months after it occurred and well beyond the time limit to file an appeal. Motion to Dismiss, Exh. E. As this appeal was not properly filed, it will not serve to satisfy the exhaustion requirement. See Woodford at 83-84. Nor were there any earlier appeals that were screened out.

In his opposition, plaintiff does not dispute that he did not properly exhaust his claims against Nanganama. Plaintiff states that while he was in administrative segregation at CSP-Sac, he placed a grievance in his cell door with the outgoing mail. Plaintiff also states that he has submitted other grievances for unrelated issues that were never processed. Plaintiff then concludes that his appeal concerning Nanganama must have been discarded by staff. Plaintiff states he did not follow up with the appeal or file a second appeal as he was transferred back to SATF. Plaintiff has not included a copy of this alleged appeal that was discarded, in fact plaintiff has included no copies of any appeals in his complaint or opposition.

The undersigned notes that the exhibits to the motion to dismiss contain many of plaintiff's inmate appeals regarding medical care for his skin condition, thus it is apparent that he

knows how to use the inmate appeal system.[2] Moreover, plaintiff's argument that he was transferred out of CSP-Sac, just after he submitted his appeal, will not excuse his failure to exhaust. Plaintiff retained the ability to appeal at a different institution as is demonstrated by his appeal concerning Nanganama in July 2009.

Moreover, as plaintiff is no doubt aware based on his ability to file inmate appeals, there are several levels to the appeals process so if his first appeal had been properly filed he would have needed to proceed to the second and third levels of appeal to completely exhaust. It would seem plaintiff never questioned that his appeal was not answered by prison officials so he could further exhaust it. If the appeal was discarded by prison staff as plaintiff alleges, he does not explain why he did not attempt to file another appeal to again attempt to exhaust. Filing one appeal that may or may not have been discarded does not demonstrate futility. Plaintiff's argument that his original may have been screened out for lack of an additional form is not supported by the evidence as defendant has shown that no appeals were filed that could have been screened out.

Ultimately, plaintiff's bare allegations that his appeal was discarded by staff will not counter the weighty evidence that defendant has presented that plaintiff failed to exhaust his administrative remedies. Thus, defendant Nanganama should be dismissed from this action for plaintiff's failure to exhaust.

Dr. Ramen

Defendant Ramen, a doctor at SATF, contends that plaintiff's allegations fail to state a claim. The entirety of plaintiff's allegations against Dr. Ramen are that:

> Later I was seen by Doctor Ramen who also told me that he knew I had bugs, but the medical department was under great scrutiny and he or no doctor was going to make previous doctors liable. I offered to show Salmi [another doctor] and Ramen the eggs that was left by the bugs. Dr. Ramen without examining me ask

---

[2] As many of the appeals involve Dr. Ramen, it would appear that plaintiff properly exhausted his claim against Dr. Ramen and may account for why this defendant did not bring a motion to dismiss for failure to exhaust.

        me where the rashes were at, that I told him I had, I told him on fingers, legs, back, chest, and crotch. He told me that he was ordering me to see a dermatologist.

Complaint at 7-8.

In February 2009, plaintiff alleges that Ramen did not treat him and instead referred plaintiff to a dermatologist though plaintiff was not seen by the dermatologist until June 2009. However, plaintiff makes no allegations that Ramen was responsible for the delay.[3]

It is also noteworthy that according to plaintiff's complaint, prior to his visit to Ramen, the other doctors and nurses at SATF provided treatment for skin infections and scabies, but the treatments were ineffective. Plaintiff states that the medical staff knew the treatments were ineffective but it was the only treatment that the prison had available. In fact, plaintiff faults other defendants for continuing treatments that were not effective so it does not appear that plaintiff wished Ramen to continue those treatments.[4]

Therefore, assuming that all of plaintiff's allegations are true, plaintiff's medical condition was not improving with the treatment at the prison and Ramen did not use the ineffective treatments and instead referred plaintiff to an outside physician for treatment. It is not clear how this demonstrates deliberate indifference on behalf of Ramen. If anything, it shows that Ramen provided adequate medical care and made the referral to an outside physician, which appears is what plaintiff desired. That plaintiff was not happy with the outside physician who eventually treated him, is not evidence against Ramen. Plaintiff also states that Ramen would not say that plaintiff had 'bugs' due to fear of liability. Assuming this is true, and as Ramen still made the outside referral, this does not constitute deliberate indifference.

In his opposition, plaintiff alleges that Ramen's referral to an outside dermatologist somehow demonstrates deliberate indifference, as Ramen knew the process would

---

[3] In his opposition to the motion to dismiss, plaintiff states the delay in seeing the dermatologist was because the prison medical board had to approve the request.

[4] It is not clear from the complaint why Ramen did not treat plaintiff.

take weeks or months, and the only available treatment was ineffective. Assuming this is accurate it is not clear what course of action plaintiff wanted Ramen to follow. That Ramen did not possess the ability to properly treat plaintiff and the outside referral was not immediate, is not a violation of the Eighth Amendment based on plaintiffs bare allegations. Plaintiff has failed to present sufficient factual assertions that state a claim that is plausible on its face. See Iqbal at 1949.

The motion to dismiss against Ramen should be granted, but plaintiff should be allowed leave to amend. However, as the remaining defendants are in the process of being served with the operative complaint it would not be appropriate for plaintiff to immediately file an amended complaint. Problems would arise in this action if Ramen proceeded on an amended complaint while the remaining defendants proceeded on the original complaint. Should these findings and recommendations be adopted, the undersigned will issue a further order regarding an amended complaint once the remaining defendants are served and based on their actions in response to the original complaint.

V. Motion for Expert Witness

Plaintiff requests an expert dermatologist. Federal Rule of Evidence 706 allows the Court to appoint expert witnesses on its own motion or on motion by a party. Fed. R. Evid. 706; Walker v. American Home Shield Long Term Disability Plan, 180 F.3d 1065, 1071 (9th Cir. 1999). Rule 706(a) does not authorize the district court to provide a plaintiff with funds for an expert witness or to appoint such a witness on a plaintiff's behalf; rather, it permits the appointment of an expert to aid the court. At this early stage in the proceedings and as the undersigned is recommending that the defendants be dismissed and leave granted to amend for Ramen and the other defendants are still being served, the appointment of an expert witness is unnecessary. Plaintiff's motion for appointment of an expert witness is denied.

\\\\\

\\\\\

1  Accordingly, IT IS HEREBY ORDERED that:

2  1. Plaintiff's motion for an expert witness (Doc. 20) is denied;

3  2. Defendants' motion to strike (Doc. 29) is denied.

4  IT IS HEREBY RECOMMENDED that defendants' motion to dismiss (Doc. 21) be granted in that:

6  1. Defendant Nanganama is dismissed for plaintiff's failure to exhaust administrative remedies;

8  2. Defendant Ramen is dismissed, but plaintiff may file an amended complaint with respect to Ramen at a future date to be determined by the court.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: 11/17/2010

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

GGH: AB
norw2929.mtd