1
2
3
4
5
6
7                         IN THE UNITED STATES DISTRICT COURT

8                        FOR THE EASTERN DISTRICT OF CALIFORNIA

9   GREGORY NORWOOD,

10              Plaintiff,                      No. CIV S-09-2929 LKK GGH P

11          vs.

12   NANGANAMA, et al.,                         FINDINGS AND RECOMMENDATIONS

13              Defendants.

14   _____/

15   I.  Introduction

16              Plaintiff is state prisoner proceeding pro se with a civil rights action pursuant to

17   42 U.S.C. § 1983.  Pending before the court is defendant Byers' motion for summary judgment

18   filed on February 13, 2012.  Doc. 70.  Plaintiff alleges that Byers was deliberately indifferent in

19   his treatment of plaintiff's skin condition.  For the reasons that follow, defendant's motion for

20   summary judgment should be denied.

21   II.  The Operative Complaint

22              By order of February 3, 2012, the Honorable Lawrence K. Karlton gave plaintiff

23   the opportunity to amend his then operative First Amended Complaint (FAC).  The purpose of

24   the amendment was to state, if possible, claims against defendants other than defendant Byers

25   who is the moving defendant in this motion.  Rather than await the Second Amended Complaint

26   (SAC), defendant Byers moved for summary judgment on the FAC.  Plaintiff thereupon filed the

1

1   SAC, and his opposition to the summary judgment motion after that.

2         A review of the two complaints, however, discloses that the allegations against

3   defendant Byers are identical, if not verbatim.[1]  Therefore, the court deems the motion to be

4   made to the SAC, and deems the answer to the FAC to be the answer to the SAC as well.

5   III.  <u>Motion for Summary Judgment</u>

6         <u>Legal Standard for Summary Judgment</u>

7         Summary judgment is appropriate when it is demonstrated that there exists "no

8   genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

9   law." Fed. R. Civ. P. 56(c).

10         Under summary judgment practice, the moving party

11       always bears the initial responsibility of informing the district court
    of the basis for its motion, and identifying those portions of "the

12       pleadings, depositions, answers to interrogatories, and admissions
    on file, together with the affidavits, if any," which it believes

13       demonstrate the absence of a genuine issue of material fact.

14   <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ.

15   P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

16   issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

17   depositions, answers to interrogatories, and admissions on file.'"  <u>Id.</u>  Indeed, summary judgment

18   should be entered, after adequate time for discovery and upon motion, against a party who fails to

19   make a showing sufficient to establish the existence of an element essential to that party's case,

20   and on which that party will bear the burden of proof at trial.  <u>See id.</u> at 322, 106 S. Ct. at 2552.

21   "[A] complete failure of proof concerning an essential element of the nonmoving party's case

22   necessarily renders all other facts immaterial."  <u>Id.</u>  In such a circumstance, summary judgment

23   should be granted, "so long as whatever is before the district court demonstrates that the standard

24   for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  <u>Id.</u> at 323, 106 S. Ct. at

25   

26         [1] It appears that plaintiff simply photocopied the allegations against defendant Byers.

1   2553.

2          If the moving party meets its initial responsibility, the burden then shifts to the

3   opposing party to establish that a genuine issue as to any material fact actually does exist. See

4   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356

5   (1986).  In attempting to establish the existence of this factual dispute, the opposing party may

6   not rely upon the allegations or denials of its pleadings but is required to tender evidence of

7   specific facts in the form of affidavits, and/or admissible discovery material, in support of its

8   contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,

9   106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is

10  material, i.e., a fact that might affect the outcome of the suit under the governing law, see

11  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

12  Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the

13  dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

14  nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

15         In the endeavor to establish the existence of a factual dispute, the opposing party

16  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

17  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

18  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

19  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

20  genuine need for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.

21  56(e) advisory committee's note on 1963 amendments).

22         In resolving the summary judgment motion, the court examines the pleadings,

23  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

24  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

25  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

26  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587, 106 S. Ct.

at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

obligation to produce a factual predicate from which the inference may be drawn.  See Richards

v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

(9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than

simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

On December 23, 2009, the court advised plaintiff of the requirements for

opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v.

Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409,

411-12 (9th Cir. 1988).

The above advice would, however, seem to be unnecessary as the Ninth Circuit

has held that procedural requirements applied to ordinary litigants at summary judgment do not

apply to prisoner pro se litigants.  In Thomas v. Ponder, 611 F.3d 1144 (9th Cir. 2010), the

district courts were cautioned to "construe liberally motion papers and pleadings filed by *pro se*

inmates and ... avoid applying summary judgment rules strictly."  Id. at 1150.  No example or

further definition of "liberal" construction or "too strict" application of rules was given in Ponder

suggesting that any jurist would know inherently when to dispense with the wording of rules.

Since the application of any rule which results in adverse consequences to the pro se inmate

could always be construed in hindsight as not liberal enough a construction, or too strict an

application, it appears that only the essentials of summary judgment, i.e., declarations or

testimony under oath, and presentation of evidence not grossly at odds with rules of evidence,

need be submitted by the pro se party.

Undisputed Facts

Plaintiff was an inmate at California State Substance Abuse and Treatment

Facility (SATF) at the relevant time.  Motion to Dismiss (MTD) at 2.  The only time that

4

1   defendant treated plaintiff was on January 22, 2008.  MTD at 2.  Plaintiff wanted to be treated for

2   a "microscopic infestation."  Opposition to Motion to Dismiss (Opposition) at 2.

3          On January 22, 2008, defendant noted that plaintiff had a rash on his upper thighs

4   and had previously been treated for scabies on four occasions.  MTD, Exh B.  Defendant treated

5   plaintiff for tinea crusis and ordered Ketoconazole Cream.  Id.; Plaintiff's Deposition at 22, 23,

6   27, 43.  In June 2009, plaintiff was seen by an outside dermatologist who, according to plaintiff,

7   stated that he had eczema and ordered pills and a topical cream.  Plaintiff's Original Complaint at

8   8.

9          Defendant Byers was employed as a physicians assistant at SATF at the relevant

10  time.  SAC at 4.  It is also undisputed for purposes of this motion that defendant told plaintiff that

11  he intentionally misdiagnosed plaintiff in order to avoid a lawsuit, ostensibly with respect to the

12  previous treating physician, or the medical department as a whole.  Plaintiff's Undisputed Facts.

13  Plaintiff states this in the complaint (under penalty of perjury) and his undisputed facts.

14  Defendant chose not to dispute this as defendant did not file a reply, nor did the motion for

15  summary judgment include any declaration from defendant Byers to present a possible alternative

16  version of the facts regarding this allegation.

17      Disputed Facts

18         Plaintiff states that defendant did not properly examine him and provided him

19  with the incorrect medication.  Opposition at 2.  Plaintiff repeatedly states that he was never

20  treated for a "microscopic infestation," rather various medical staff, including Byers, only treated

21  him for scabies and skin infections.  Id.

22          Analysis

23          Legal Standard

24         In order to state a § 1983 claim for violation of the Eighth Amendment based on

25  inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence

26  deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct.

285, 292 (1976).  To prevail, plaintiff must show both that his medical needs were objectively

serious, and that defendants possessed a sufficiently culpable state of mind.  Wilson v. Seiter,

501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir.

1992) (on remand).  The requisite state of mind for a medical claim is "deliberate indifference."

Hudson v. McMillian, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

         A serious medical need exists if the failure to treat a prisoner's condition could

result in further significant injury or the unnecessary and wanton infliction of pain.  Indications

that a prisoner has a serious need for medical treatment are the following:  the existence of an

injury that a reasonable doctor or patient would find important and worthy of comment or

treatment; the presence of a medical condition that significantly affects an individual's daily

activities; or the existence of chronic and substantial pain.  See, e.g., Wood v. Housewright, 900

F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01

(9th Cir. 1989).  McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other

grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

         In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court

defined a very strict standard which a plaintiff must meet in order to establish "deliberate

indifference."  Of course, negligence is insufficient.  Farmer, 511 U.S. at 835, 114 S. Ct. at 1978.

However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm

which is so obvious that it should be known) is insufficient.  Id. at 836-37, 114 S. Ct. at 1979.

Neither is it sufficient that a reasonable person would have known of the risk or that a defendant

should have known of the risk.  Id. at 842, 114 S. Ct. at 1981.

         A prison official acts with "deliberate indifference ... only if the
         [prison official] knows of and disregards an excessive risk to
         inmate health and safety." Gibson v. County of Washoe, Nevada,
         290 F.3d 1175, 1187 (9th Cir.2002) (citation and internal quotation
         marks omitted).  Under this standard, the prison official must not
         only "be aware of facts from which the inference could be drawn
         that a substantial risk of serious harm exists," but that person "must
         also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837,
         114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "If a [prison official]

should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." Gibson, 290 F.3d at 1188 (citation omitted). FN4 This "subjective approach" focuses only "on what a defendant's mental attitude actually was." Farmer, 511 U.S. at 839, 114 S.Ct. 1970. "Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." McGuckin, 974 F.2d at 1059 (alteration and citation omitted).

> FN4. In a recent case, we recognized that "deliberate indifference to medical needs may be shown by circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm." Lolli v. County of Orange, 351 F.3d 410, 421 (9th Cir.2003) (citations omitted); see also Gibson, 290 F.3d at 1197 (acknowledging that a plaintiff may demonstrate that officers "must have known" of a risk of harm by showing the obvious and extreme nature of a detainee's abnormal behavior).

Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004).

Also significant to the analysis is the well established principle that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

Moreover, a physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. Id.

Additionally, mere delay in medical treatment without more is insufficient to state a claim of deliberate medical indifference. Shapley v. Nevada Bd. of State Prison Com'rs, 766 F.2d 404, 408 (9th Cir. 1985). Although the delay in medical treatment must be harmful, there is no requirement that the delay cause "substantial" harm. McGuckin, 974 F.2d at 1060, citing Wood v. Housewright, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and Hudson, 112 S. Ct. at 998-1000. A finding that an inmate was seriously harmed by the defendant's action or inaction tends

7

1    to provide additional support for a claim of deliberate indifference; however, it does not end the

2    inquiry.  McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992).  In summary, "the more serious the

3    medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those

4    needs, the more likely it is that a plaintiff has established deliberate indifference on the part of

5    the defendant."  McGuckin, 974 F.2d at 1061.  The dispositive question on this summary

6    judgment motion is ultimately not what was the most appropriate course of treatment for

7    plaintiff, but whether the failure to timely give a certain type of treatment was, in essence,

8    criminally reckless.

9                     Discussion

10                   It is undisputed that defendant only treated plaintiff once for the rash on his upper

11   thighs.  It is also undisputed that on this one occasion, defendant treated plaintiff for tinea crusis

12   and provided Ketoconazole Cream.  One of plaintiff's arguments is that defendant did not

13   properly examine him.  Plaintiff states that defendant and others refused to acknowledge that he

14   had a "microscopic infestation," yet plaintiff was repeatedly treated for microscopic infestations,

15   but it seems was given different descriptions of this medical problem.  Tinea crusis is also known

16   as jock itch and is an infection of the groin caused by fungus.

17   http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001879/.[2]  It is also commonly known that

18   fungus is made up of small microscopic organisms that could be described as a microscopic

19   infestation.[3]  Essentially, defendant treated plaintiff for his ailment, a rash caused by some type of

20   \\\\\

21   \\\\\

22   ───────────────────

23        [2] The court takes judicial notice of the definitions of commonplace, and long understood,
     dermatological conditions as their general manifestation cannot be reasonably disputed.  This is a

24   different issue than whether it is easy or difficult to correctly diagnose such conditions, a subject
     of which the court could not take judicial notice.

25        [3] Plaintiff's prior treatments for scabies, also dealt with microscopic infestation as scabies
     is a skin disease caused by a very small species of mite.  This definition is subject to judicial

26   notice.  See   http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001833/

1  infection or small organism and defendant provided a cream to kill the small organism.[4]

2        Confusingly, plaintiff also faults defendant for diverting from the prior scabies

3  treatments.  Opposition at 2.  However, plaintiff admits that the prior treatments were ineffective.

4  Id.  Thus, plaintiff states his prior treatment was ineffective and he wanted a different treatment,

5  and when defendant provided a new treatment, plaintiff states he should have instead maintained

6  the ineffective prior treatment.

7        Despite these glaring deficiencies in plaintiff's action, the instant motion for

8  summary judgment was brought by defendant, who bears the burden of demonstrating the

9  absence of a genuine issue of material fact.  In the complaint, plaintiff alleges that defendant told

10 him that he knew plaintiff had "bugs" but defendant did not want to subject medical personnel to

11 a civil lawsuit so defendant would prescribe treatment only for a skin infection, as the medical

12 department did not have any other medication.  SAC at 3.  Defendant did not address this

13 allegation in the motion for summary judgment.  In fact, there is no declaration from defendant

14 Byers regarding the underlying facts of this case.  In his opposition, plaintiff again sets forth this

15 allegation as an undisputed fact, and defendant did not file a reply to refute it, nor did defendant

16 ever address it.  In both the complaint and the opposition to summary judgment, plaintiff swore

17 to these facts under the penalty of perjury.  The allegation is also presented in plaintiff's

18 deposition that defendant has included as an exhibit.  MTD, Exh. A at 21-22.  Therefore, the

19 undersigned must view this as an undisputed fact and plaintiff has demonstrated that a genuine

20

21        [4] Ketoconazole Cream is used to treat tinea corporis (ringworm; fungal skin infection that
   causes a red scaly rash on different parts of the body), tinea cruris (jock itch; fungal infection of
22 the skin in the groin or buttocks), tinea pedis (athlete's foot; fungal infection of the skin on the
   feet and between the toes), tinea versicolor (fungal infection that causes brown or light colored
23 spots on the chest, back, arms, legs, or neck), and yeast infections of the skin.  Prescription
   ketoconazole shampoo is used to treat tinea versicolor.  Over-the-counter ketoconazole shampoo
24 is used to control flaking, scaling, and itching of the scalp caused by dandruff. Ketoconazole is in
   a class of antifungal medications called imidazoles.  It works by slowing the growth of fungi that
25 cause infection.  Again, these rather pedestrian definitions and treatments are subject to judicial
   notice.  See  http://www.nlm.nih.gov/medlineplus/druginfo/meds/a605014.html

26

1  issue as to a material fact exists.  This undisputed material fact could show that defendant was

2  deliberately indifferent to plaintiff's serious medical needs by purposely misdiagnosing plaintiff

3  in order to avoid civil liability for the medical department.  This could demonstrate a

4  constitutional violation and must be determined at trial.[5]

5          Accordingly, IT IS HEREBY RECOMMENDED that defendant's motion for

6  summary judgment (Doc. 70) be denied.  The undersigned will issue a further scheduling order

7  setting a trial date if these findings and recommendations are adopted.

8          These findings and recommendations are submitted to the United States District

9  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

10  days after being served with these findings and recommendations, any party may file written

11  objections with the court and serve a copy on all parties.  Such a document should be captioned

12  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

13  shall be served and filed within seven days after service of the objections.  The parties are

14  advised that failure to file objections within the specified time may waive the right to appeal the

15  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

16  DATED: April 18, 2012

17                    /s/ Gregory G. Hollows
                   UNITED STATES MAGISTRATE JUDGE
18  GGH: AB
    norw2929.sj
19

20

21

22

23      [5] The undersigned previously denied plaintiff's request for an expert witness.  However,
    the undersigned has again considered whether appointment of an expert is appropriate.  While the
24  undersigned has recommended that the summary judgment motion be denied, the facts regarding
    plaintiff's rash do not warrant an expert based on the nature of plaintiff's allegations.  A court
25  must make some judgment call as to whether the expense of an appointed expert, to be paid
    either by the opposing party or the court is warranted by the facts known thus far.  See Gorton v.
26  Todd, 793 F. Supp. 2nd 1171, 1181 (E.D. Cal. 2011).