1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   GREGORY NORWOOD,                          No.  2:09-cv-2929 LKK AC P

12             Plaintiff,

13        v.                                   ORDER AND

14   T. BYERS, et al.,                         FINDINGS & RECOMMENDATIONS

15             Defendants.

16

17        Plaintiff is a state prisoner proceeding pro se and seeking relief pursuant to 42 U.S.C.

18   § 1983.  Pending before the court is defendants Dr. Salmi and Nurse Practitioner ("NP") Kaur's

19   motion to dismiss the second amended complaint ("SAC") pursuant to Federal Rule of Civil

20   Procedure 12(b)(6) and the non-enumerated Rule 12(b).  ECF No. 87.  Defendant T. Byers has

21   filed a joinder to the motion to dismiss.  ECF No. 90.  Plaintiff opposes both the motion to

22   dismiss and the joinder.  On review of the motion and joinder, the documents filed in support and

23   opposition, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

24                      ALLEGATIONS IN SECOND AMENDED COMPLAINT[1]

25   _____

     [1] The court is mystified by the defendants' citation to plaintiff's *original* complaint when
26   presenting plaintiff's factual allegations in their motion to dismiss the *second* amended complaint.
     See Defs.' Mot. to Dismiss at 2-5.  This, of course, results in the inclusion of allegations that have
27   been omitted from the second amended complaint, including those against a now-dismissed
     defendant (Dr. Ramen) and those related to a non-party dermatologist.  See, e.g., id. at 2, 4.  As
28   defendants are surely aware, an amended complaint supersedes the original complaint.  See Loux

                                                   1

Plaintiff is an inmate housed at California Substance Abuse Treatment Facility and State Prison ("CSATF-SP") in Corcoran, California.  SAC, ECF No. 71 at 5.  Plaintiff alleges generally that medical personnel at CSATF-SP misdiagnosed and thereby failed to properly treat a microscopic skin infestation that has caused him substantial physical and psychological discomfort.  Plaintiff accuses the named defendants and other medical personnel of diagnosing and treating plaintiff without properly examining him and continuing to order treatment that has repeatedly proven ineffective.  Plaintiff accuses the defendants of prolonging plaintiff's suffering and continuing to misdiagnose him so as to protect themselves and previously-treating medical personnel from civil liability.

More specifically, plaintiff claims that he contracted a "microscopic insect infestation" while temporarily housed at California State Prison – Sacramento ("CSP-Sac").[2]  This infestation manifested itself in headaches, stress, rashes, and open sores on plaintiff's entire body.[3]  While at CSP-Sac, plaintiff was seen by two doctors, one of whom prescribed treatment for a "skin infection" allegedly without examining plaintiff and despite acknowledging that plaintiff was infected with bugs.[4]  The second doctor merely reviewed plaintiff's medical record without conducting an examination and also prescribed treatment for a "skin infection."

On return to CSATF-SP from CSP-Sac, plaintiff was seen by a doctor who diagnosed plaintiff with scabies[5] and prescribed "primithrin crème."[6]  Plaintiff claims this treatment was ineffective, and he was given a follow-up (unspecified) treatment that also proved ineffective.

---

v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Accordingly, the court will disregard those portions of defendants' motion that rely on or refer to any pleading other than the operative pleading.

[2] The SAC is devoid of any dates related to plaintiff's temporary placement at CSP-Sac and his treatment of and/or examination by the defendants.

[3] Though plaintiff does not assert any claims related to the circumstances under which he contracted the condition, he does accuse staff at CSP-Sac of improperly cleaning the cell in which he was housed and thereby causing the infestation of plaintiff's body.

[4] Plaintiff's allegations are premised on a distinction between a "skin infection" and an "insect infestation."

[5] Scabies is an itchy skin condition caused by the microscopic mite *Sarcoptes scabei*.  See Centers for Disease Control and Prevention, http://www.cdc.gov/parasites/scabies/gen_info/faqs.html.

[6] Plaintiff may be referring to permethrin cream.  See Nat'l Inst. of Health Drug Info: Permethrin Topical, available at http://www.nlm.nih.gov/medlineplus/druginfo/meds/a698037.html.

1    Plaintiff was then seen by another doctor, who again prescribed the ineffective "primithrin

2    crème."  Despite numerous additional visits with medical personnel, plaintiff's symptoms

3    persisted.

4          On an unspecified date, plaintiff was seen by defendant physician's assistant Timothy

5    Byers.  SAC, ECF No. 71 at 6-7.  Plaintiff accuses Byers of intentionally misdiagnosing him in

6    order to avoid civil liability; failing to properly examine him; prescribing medication that he, as a

7    physician's assistant, was not authorized to prescribe; failing to order a skin biopsy; and failing to

8    refer plaintiff to a skin specialist.  Id.  Byers also allegedly informed plaintiff that the medical

9    department did not have any medication other than that previously prescribed to treat plaintiff's

10   skin condition.  Id. at 6.

11         Plaintiff was also seen by defendant Dr. Salmi, whom plaintiff accuses of participating in

12   a conspiracy to prevent civil liability.  SAC, ECF No. 71 at 7.  Dr. Salmi allegedly informed

13   plaintiff "that he would refuse to treat plaintiff's insect infestation, so that plaintiff could not sue

14   medical staff."  Id.  Plaintiff accuses Dr. Salmi of refusing to treat him for a skin infestation,

15   refusing to refer plaintiff to a skin specialist, and prescribing inadequate medication.  Id.

16         On an unspecified date, plaintiff was seen by a dermatologist via "telemed"[7] who

17   diagnosed plaintiff with an unspecified condition and prescribed an unspecified treatment that

18   plaintiff did not receive due to an error with the pharmacy.  See SAC, ECF No. 71 at 8.

19         Finally, plaintiff was seen by defendant NP Kaur.  SAC, ECF No. 71 at 7-8.  Plaintiff

20   alleges that Kaur (1) told plaintiff that she would not treat him for a parasite infestation despite

21   knowing that he had one; (2) misdiagnosed plaintiff, (3) diverted from the (unspecified) treatment

22   ordered by the dermatologist, and (4) accused plaintiff of refusing the dermatologist's prescribed

23   medication, which plaintiff claims he did not receive.  Id.

24   ////

25   ////

26

27   _____

[7] In the SAC, plaintiff fails to define the term "telemed," fails to provide specific information
28   regarding this dermatologist's examination of plaintiff, and provides no information on the
     diagnosis rendered or the treatment ordered.

3

1        RELEVANT PROCEDURAL BACKGROUND

2              Plaintiff initiated this action on October 21, 2009, naming as defendants Dr. Nanganama,

3    T. Byers, Dr. Salmi, Dr. Ramen, and NP Kaur.  The court initially screened the complaint and

4    found service proper for all five defendants.  ECF No. 9.  On May 6, 2010, defendants Dr.

5    Nanganama and Dr. Ramen filed a motion to dismiss.  ECF No. 21.  On November 18, 2010, the

6    magistrate judge previously assigned to this case, Magistrate Judge Gregory G. Hollows[8], issued

7    findings and recommendations recommending that plaintiff's claims as to Dr. Nanganama be

8    dismissed for failure to exhaust administrative remedies and plaintiff's claims as to Dr. Ramen be

9    dismissed with leave to amend "at a future date to be determined by the court."  ECF No. 45.

10   This recommendation was adopted in full by the Honorable Lawrence K. Karlton on January 11,

11   2011.  ECF No. 47.  On February 7, 2011, defendant Byers answered the complaint.  ECF No. 48.

12             On April 14, 2011, Magistrate Judge Hollows granted plaintiff twenty-eight days to file a

13   first amended complaint that (1) amended his allegations against Dr. Ramen in accordance with

14   the previous order and findings and recommendations, and (2) included his previously-asserted

15   allegations against Byers.  ECF No. 53.  The magistrate judge also recommended that defendants

16   Dr. Salmi and NP Kaur be dismissed for failure to timely serve.  Id.

17             On May 2, 2011, plaintiff filed a first amended complaint naming only Byers as a

18   defendant.  ECF No. 55.  Because plaintiff failed to name Dr. Ramen in the first amended

19   complaint, Judge Hollows recommended that this defendant be dismissed from this case.  ECF

20   No. 56.  Judge Karlton adopted this recommendation and dismissed Dr. Ramen on July 18, 2011.

21   ECF No. 60.  Then, on review of the magistrate judge's April 14, 2011 findings and

22   recommendations, Judge Karlton determined that plaintiff failed to name Dr. Salmi and NP Kaur

23   in the first amended complaint because plaintiff misinterpreted Magistrate Judge Hollows's prior

24   order.  See ECF No. 67.  Accordingly, Judge Karlton declined to adopt the magistrate judge's

25   April 14, 2011 findings and recommendations and sua sponte granted plaintiff leave to amend the

26   first amended complaint to contain allegations against all defendants that plaintiff intended to sue.

27

28   [8] This matter was reassigned to the undersigned on November 19, 2012.  ECF No. 93.

1    Id.

2        On February 17, 2013, plaintiff filed the operative SAC naming Byers, Dr. Salmi and

3    Kaur and seeking injunctive relief and damages.  ECF No. 71.  As the docket in this case makes

4    clear, plaintiff experienced substantial trouble serving Dr. Salmi and NP Kaur.  See ECF Nos. 53,

5    57, 67, 68.  Dr. Salmi was eventually served on June 11, 2012, ECF No. 79, and NP Kaur was

6    served on July 12, 2012, ECF No. 84.  All three defendants have now appeared in this case.

7        On February 13, 2012, before plaintiff filed the SAC, Byers filed a motion for summary

8    judgment directed to the first amended complaint.  ECF No. 70.  In considering this motion, and

9    because plaintiff's allegations against Byers in the first amended complaint were identical to the

10   allegations in the SAC, the court construed Byers's motion to be directed at the SAC and

11   recommended that the motion be denied.  See ECF No. 75.  Ultimately, however, Magistrate

12   Judge Hollows vacated these findings and recommendations due to plaintiff's difficulties in

13   serving Dr. Salmi and NP Kaur and directed Byers to refile his motion for summary judgment

14   once Dr. Salmi and NP Kaur filed their own respective dispositive motions.  ECF No. 81.

15       This matter is now before the court on Dr. Salmi and NP Kaur's motion to dismiss, filed

16   October 1, 2012.  Since its filing, the parties submitted two rounds of briefing on the motion.  See

17   ECF Nos. 89, 92, 98-99.  On April 29, 2013, plaintiff also filed a surreply.  ECF No. 100.

18   Defendants move to strike this surreply, and plaintiff moves for leave to file it.  ECF Nos. 101-02.

19                                    DISCUSSION

20   A.    Plaintiff's Sur-Reply

21       The court turns first to plaintiff's unauthorized surreply, filed April 29, 2013.  A surreply,

22   or sur-reply, is an additional reply to a motion filed after the motion has already been fully

23   briefed.  Defendants move to strike plaintiff's surreply as unauthorized and untimely.  Plaintiff

24   seeks leave to file the surreply on the ground that the arguments made therein are intended to

25   assist the court.

26       While the Local Rules provide for a motion, an opposition, and a reply, neither the Local

27   Rules nor the Federal Rules provide the right to file a surreply.  See E.D. Cal. R. 230(b)-(d), (l).

28   A district court may allow a surreply to be filed, but only "where a valid reason for such

                                           5

1  additional briefing exists, such as where the movant raises new arguments in its reply brief." Hill

2  v. England, 2005 WL 3031136, at *1 (E.D. Cal. Nov. 8, 2005).  The court finds that defendants

3  did not raise new arguments in their reply that necessitated additional argument from plaintiff,

4  plaintiff did not seek leave to file a surreply before actually filing it, and the arguments in the

5  surreply do not alter the analysis below.

6        Accordingly, defendants' motion to strike the surreply should be granted, and plaintiff's

7  motion for leave to file a surreply should be denied.

8  B.     T. Byers's Joinder

9        Next, the court turns to defendant T. Byers's October 17, 2012 joinder to Dr. Salmi and

10  NP Kaur's motion to dismiss.  Plaintiff opposes this joinder on the ground that the time for filing

11  a motion to dismiss has passed for Byers.

12        Generally, a motion to dismiss for failure to state a claim must be filed before a responsive

13  pleading has been filed.  See Fed. R. Civ. P. 12(b)(6); Elvig v. Calvin Presbyterian Church, 375

14  F.3d 951, 954 (9th Cir. 2004).  A responsive pleading, in turn, must be filed within 21 days after

15  being served with a summons and complaint.  See Fed. R. Civ. P. 12(a)(1).  Also as a general

16  rule, an unenumerated 12(b) motion must be filed prior to an answer and, if filed after a

17  responsive pleading, is deemed untimely.  See, e.g., Ritza v. International Longshoremen's and

18  Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988) (citing 5 C. Wright & A. Miller,

19  Federal Practice and Procedure § 1360 at 642 (1969)).  However, there is some conflict in the

20  courts within this circuit on the question whether an unenumerated Rule 12(b) motion premised

21  on a prisoner's failure to exhaust administrative remedies should be denied simply because it was

22  untimely filed.  Compare Anaya v. Campbell, 2011 WL 4458769, *11 (E.D. Cal. 2011) (denying

23  motion as untimely despite noting that there are "conflicting decisions at the district court level

24  within this circuit" concerning the appropriateness of denying an untimely-filed unenumerated

25  Rule 12(b) motion), with Donte v. Swingle, 2011 WL 976613, at *3 (E.D. Cal. 2011) (allowing

26  defendant to proceed with unenumerated 12(b) motion filed as a motion for summary judgment).

27  See also Studio Elec. Techs. Local 728 v. Int'l Photographers of Motion Picture Indus., Local

28  659, 598 F.2d 551, 552 n.2 (9th Cir. 1979) (stating that the defense of failure to exhaust should be

1   treated as raised as a motion to dismiss "even though [it is] raised by a motion for summary

2   judgment.").

3         In this case, Byers filed an answer to the original complaint on February 7, 2011.  Plaintiff

4   has amended his complaint twice since Byers answered.   Normal and orderly compliance with

5   Rule 12(b) has been made difficult by procedural complications related to plaintiff's difficulties

6   serving Dr. Salmi and NP Kaur.  The moving defendants, who have not answered, raise threshold

7   issues that are equally applicable to Byers.  Importantly, Byers alleged failure to exhaust as an

8   affirmative defense in his February 7, 2011 answer.  See ECF No. 48 at 3.  Considerations of

9   judicial efficiency support resolving common issues together.  For these reasons, the court finds

10   that Byers is not barred from joining in the moving defendants' Rule 12(b) motion for failure to

11   exhaust administrative remedies.

12   C.   Dr. Salmi and NP Kaur's Motion to Dismiss

13         The court will now address the merits of defendants Dr. Salmi and NP Kaur's motion to

14   dismiss the SAC.  Defendants first ask the court to screen the SAC pursuant to 28 U.S.C.

15   § 1915(e).  They then seek dismissal on the grounds that (1) plaintiff's allegations fail to state a

16   claim, (2) plaintiff failed to exhaust his administrative remedies, and (3) defendants are entitled to

17   qualified immunity.

18         For the reasons set forth here, the court finds that plaintiff's claims as to Dr. Salmi should

19   be dismissed for failure to exhaust administrative remedies.  Additionally, the court finds that

20   plaintiff's claims as to NP Kaur are administratively exhausted but should be dismissed with

21   leave to amend pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.  The court does not reach the

22   question of qualified immunity.

23        1.   Exhaustion of Administrative Remedies

24         The Ninth Circuit has held that failure to exhaust administrative remedies is an affirmative

25   defense, and therefore the burden of raising and proving the absence of exhaustion is on

26   defendants.  See Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  The Prison Litigation

27   Reform Act ("PLRA") provides:

28         No action shall be brought with respect to prison conditions under

1
2

> section 1983 of this title, or any other Federal law, by a prisoner
> confined in any jail, prison, or other correctional facility until such
> administrative remedies as are available are exhausted.

3
4

42 U.S.C. § 1997e.  The exhaustion requirement is mandatory.  <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002).

5
6
7
8
9
10
11
12

The proper pretrial motion for establishing non-exhaustion of administrative remedies under 42 U.S.C. § 1997e(a) is a non-enumerated motion under Rule 12(b).  <u>See</u> <u>Wyatt</u>, 315 F.3d at 1119.  "In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact."  <u>Id.</u> at 1119-20; <u>see also</u> <u>Ritza v. Int'l Longshoremen's and Warehousemen's Union</u>, 837 F.2d 365, 369 (9th Cir. 1988) (when deciding an unenumerated 12(b) motion, the court may look beyond the pleadings and consider facts outside the record).  If the court concludes that the prisoner has failed to exhaust administrative remedies, the appropriate remedy is dismissal without prejudice.  <u>Id.</u>

13
14
15
16
17
18

Proper exhaustion of administrative remedies is required in order to provide the government agency "a fair and full opportunity" to adjudicate a prisoner's claims.  This "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)."  <u>Woodford v. Ngo</u>, 548 U.S. 81, 90 (2006) (emphasis in original) (citation omitted).  Proper exhaustion, in turn, "demands compliance with an agency's deadlines and other critical procedural rules."  <u>Id.</u> at 90-91.

19
20
21
22
23
24
25
26
27

"The [PLRA] requires the prisoner to use the administrative process that the state provides."  <u>Butler v. Adams</u>, 397 F.3d 1181, 1183 (9th Cir. 2005).  The Ninth Circuit has held, therefore, that "a prisoner need not press on to exhaust further levels of review once he has either received all 'available' remedies at an intermediate level of review or been reliably informed by an administrator that no remedies are available."  <u>Brown v. Valoff</u>, 422 F.3d 926, 935 (9th Cir. 2005); <u>see also</u> <u>Butler</u>, 397 F.3d at 1183 (where a prison grievance procedure asks only that an inmate describe the problem and request a remedy, administrative remedies are deemed exhausted as to the claims against all individuals named in the complaint).  The grievance system, however, allows for the award of prospective relief, but not monetary damages (aside from a nominal

28

1   amount for property damage).  See Rumbles v. Hill, 182 F.3d 1064, 1068 (9th Cir. 1999).

2         The administrative appeal system for inmates in the California prison system is set forth in

3   Title 15 of the California Code of Regulations.  "Any inmate or parolee under the [California

4   Department of Correction's] jurisdiction may appeal any departmental decision, action, condition

5   or policy perceived by those individuals as adversely affecting their welfare."  15 CA A.D.C.

6   § 3084.1(a).[9]  Under the regulations in place at the time plaintiff filed his 602 appeal forms in

7   2008 and 2009, a prisoner had to proceed through several levels of appeal to exhaust his

8   administrative remedies: (1) informal resolution [10]; (2) formal written appeal on a 602 inmate

9   appeal form at the first level of appeal[11]; (3) second level of appeal to the institution head or

10  designee; and (4) third level appeal to the Director of the California Department of Corrections

11  and Rehabilitation (herein "Director's level").  Cal. Code Regs. tit. 15, § 3084.5; Woodford, 548

12  U.S. at 85-86; Wyatt, 315 F.3d at 1119.

13        Inmates must fill out two parts of the 602 appeal form: part A asks for a description of the

14  problem, and part B asks the inmate to articulate the "[a]ction requested."  A final decision from

15  the Director's level generally satisfies the exhaustion requirement under § 1997e(a).  Barry v.

16  Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. 15, § 3084.5).  The

17  Code of Regulations specifically informs inmates that "[a]dministrative remedies shall not be

18  considered exhausted relative to any new issue, information, or person later named by the

19  _____

20  [9] The California Department of Corrections and Rehabilitation inmate formal administrative
    appeals process underwent a major revision in 2011, including revising the language in
    subsection 3084.1(a).  The changes to this subsection were not substantive.

21  [10] Under California Code of Regulations Title 15, § 3084.5(a)(3), the informal level of appeal was
22  bypassed for appeals of (1) classification committee actions; (2) serious disciplinary infractions;
    (3) classification staff representative actions; (4) departmental regulations, policies, or operational
23  procedures; (5) exceptional circumstances defined in section 3084.7; (6) any action which the
    appeals coordinator determines cannot be resolved informally; (7) alleged misconduct by a
24  departmental peace officer; or (8) the denial of disabled inmate or parolee requests for reasonable
    modification or accommodation filed on CDC Form 1824 (1/95), Reasonable Modification Or
25  Accommodation Request, pursuant to section 3085.

26  [11] The appeals coordinator could elect to bypass an appeal at the First Formal level and submit it
    directly to the Second Formal Level for (1) a policy or procedure implemented by the institution
27  head; (2) a policy, procedure or regulation implemented by the department; (3) an issue which
    cannot be resolved at the division head's level; e.g., appeal of a regular transfer; (4) serious
28  disciplinary infractions.  Cal. Code Regs tit. 15, § 3084.5(b).

1  appellant that was not included in the originally submitted CDCR Form 602." Cal. Code Regs.

2  tit. 15, § 3084.1(b).

3                              a.      Plaintiff's Inmate Appeals

4          As the documents attached to defendants' motion to dismiss and plaintiff's opposition

5  make clear, plaintiff filed numerous 602 appeal forms ("602s") concerning the medical care he

6  received for his skin problem.

7                              i.      Inmate Appeal Log No. 08-2492

8          Plaintiff filed his first 602 on January 10, 2008, and it was assigned Log No. 08-2492.

9  See Crum Decl. Ex. A, ECF No. 87-5 at 1-4.  In describing his problem, plaintiff stated that on

10  January 9, 2008 he was treated for a fourth time for an "insect infestation" with "primethrin

11  cream" with negative results.  While medical personnel informed plaintiff that the cream was the

12  only treatment available for his condition, plaintiff wrote that the treatment had been ineffective.

13  Plaintiff complained that he was bleeding in his underwear and on his bed, that his nerves were

14  getting worse, and that he was unable to sleep.  Plaintiff requested that he be treated effectively

15  and diagnosed properly by a dermatologist.  Id.

16          On February 7, 2008, plaintiff's appeal was granted in part at the informal level of review.

17  Crum Decl. Ex. A.  Plaintiff was examined by the yard physician on January 22, 2008, who

18  ordered medication but found no medical indication for a referral to a dermatologist at that time.

19  ECF No. 87-5 at 2.

20          On February 15, 2008, plaintiff appealed to the first formal level of review.  ECF No. 87-5

21  at 2.  This appeal was assigned to a reviewer in May 2008 and a response was due by June 19,

22  2008.  See id. at 3.  Having failed to receive a timely response, plaintiff submitted an Inmate

23  Request for Interview form on June 24, 2008 asking about the status of his appeal.  See Pl.'s

24  Opp'n, ECF No. 98 at 21.  On an unknown date, plaintiff received the following response: "Your

25  appeal is currently assigned for 1st level response.  It will be forwarded to you upon completion.

26  Apologizing for the delay."

27          On September 2, 2008, plaintiff's appeal was granted in part at the first formal level of

28  review.  ECF No. 87-5 at 3.  Plaintiff was examined by Dr. Salmi on May 15, 2008.  Based on the

examination and plaintiff's statements, Dr. Salmi ordered medication for plaintiff and advised him to maintain clean clothing and bedding.  Dr. Salmi also found no reason to refer plaintiff to a dermatologist.  Id.

Plaintiff did not appeal to the second level of review or to the Director's level of review. Id.

ii.      Inmate Appeal No. 33-2009-11051

Plaintiff later submitted multiple appeals concerning the medical response to his skin problem at CSATF-SP.  On February 13, 2009, plaintiff submitted a 602 regarding his February 9, 2009 examination by Dr. Ramen.  Crum Decl. Ex. B, ECF No. 87-5 at 9-12.  In this appeal, plaintiff complained that he had been treated for a "scabby infestation" four times with "primethrin" cream, which was clearly ineffective because his infection had not gone away. Plaintiff claimed that he had been treated for over a year with no change in his condition and that the treating medical personnel were improperly and unconstitutionally denying adequate treatment, including referral to outside care.  He accused his treating doctors of merely repeating the diagnosis and treatment of previous doctors without conducting an adequate examination. According to plaintiff, this has resulted in severe pain, inability to sleep, nervousness, and psychological stress.  Plaintiff asked to be seen by an independent examiner and stated that he needed a stronger or different treatment.  In his recitation of the history of the problem, plaintiff contended generally that prison medical providers including Dr. Ramen, Dr. Enemoh, Dr. Jean-Pierre and defendant Byers were participating in a "cover-up" to prevent plaintiff from seeing an outside doctor.  ECF No. 87-5 at 11.

This appeal was screened out as duplicative of Log No. 08-2492, despite plaintiff's repeated objections that the appeal was not duplicative because he was challenging only Dr. Ramen's February 9, 2009 examination, and not medical assistance rendered to him before that date.  ECF No. 87-5 at 13-14.

iii.      Inmate Appeal No. 33-2009-14154

On July 7, 2009, plaintiff submitted another 602, this time in reference to an appointment he had with a dermatologist on June 12, 2009.  Crum Decl. Ex. C, ECF No. 87-5 at 23-26.

1  Plaintiff accused this doctor of improperly diagnosing him without conducting an adequate

2  examination or performing any tests other than a visual inspection.  Plaintiff also accused the

3  doctor of prescribing a medication that plaintiff claimed was ineffective and that he stated he did

4  not receive in any case.  Plaintiff accused medical personnel of not taking his complaints

5  seriously, resulting in continued physical and psychological pain.  Plaintiff requested effective

6  treatment for his skin problem.

7        On July 13, 2009, this appeal was screened out on the ground that plaintiff's request for

8  health care services should have been submitted on a different form.  ECF No. 87-5 at 16.  When

9  this appeal was resubmitted on a health care appeal form, it was then screened out as duplicative

10  of Log No. 08-2492.  Id. at 17.

11                    iv.    Inmate Appeal No. 33-2009-14388

12        On July 13, 2009, plaintiff filed a 602 regarding his treatment for his skin problem.  Crum

13  Decl. Ex. D, ECF No. 87-6 at 2-8.  This appeal referred to a July 9, 2009 diagnosis given by NP

14  Kaur.  According to plaintiff, NP Kaur was aware that plaintiff saw "little dead (black) bugs"

15  every morning in his bed, meaning that plaintiff was suffering from an insect infestation instead

16  of a mere "skin condition" that was the diagnosis on file at the time.  Although NP Kaur stated

17  that she would contact the center for disease control to get the scabies protocol, plaintiff accused

18  this individual of conspiring with other medical personnel to intentionally misdiagnose him.

19  Plaintiff also claimed that NP Kaur never ordered medication for him.  Plaintiff stated that NP

20  Kaur and other medical personnel, including Dr. Ramen and physician's assistant Byers, should

21  have conducted more thorough evaluations and tests instead of relying on mere visual

22  examinations.  Their failure to do so, plaintiff claimed, resulted in severe pain, discomfort, and

23  bite marks over his entire body.  Plaintiff requested that he receive an examination more thorough

24  than a visual examination by a doctor unaffiliated with the prison.

25        On July 24, 2009, this appeal was screened out as duplicative of Inmate Appeal No. 33-

26  2009-14154, which, as noted above, was itself screened out as duplicative of Log No. 08-2492.

27  ECF No. 87-6 at 2.

28  ////

v.       Inmate Appeal No. 33-2009-14723

Finally[12], on July 28, 2009, plaintiff filed a 602 complaining of the general course of treatment he had received thus far for his skin problems.  Crum Decl. Ex. E, ECF No. 87-6 at 10-16.  Plaintiff accused medical personnel at CSATF-SP of being deliberately indifferent to his medical needs by falsifying examination reports and by failing to properly examine, diagnose, and treat him.  Plaintiff's appeal included a comprehensive review of the treatment he had received by specific medical personnel from the time of infection to the time of the appeal.  Plaintiff accused each of the identified medical staff (including Dr. Salmi, Byers, and NP Kaur) of misdiagnosing him with a "skin condition" and prescribing ineffective treatment despite knowing and acknowledging that he had an insect infestation, all to avoid civil liability.  Plaintiff then accused the appeals coordinator of violating his First Amendment rights by repeatedly denying and screening out plaintiff's appeals, rendering it impossible for plaintiff to exhaust his administrative remedies.

On August 11, 2009, this appeal was screened out as duplicative of Inmate Appeal No. 33-2009-14388, which had been screened out as duplicative of Inmate Appeal No. 33-2009-14154, which was screened out as duplicative of Log No. 08-2492.  ECF No. 87-6 at 10.

b.       Analysis

i.       Dr. Salmi

Defendants seek dismissal of plaintiff's claims against Dr. Salmi for, inter alia, failure to exhaust administrative remedies.  The court agrees that Dr. Salmi must be dismissed from this action.

According to the documents submitted by the parties, Dr. Salmi examined plaintiff only one time, in response to plaintiff's January 10, 2008 602 inmate appeal form, Log No. 08-2492.  At the first formal level of review, Dr. Salmi examined plaintiff on May 15, 2008 and prescribed medication.  The appeal form reflects that plaintiff did not thereafter submit his appeal to either

---

[12] Defendants submit two additional 602 appeal forms filed by plaintiff concerning his skin condition.  See Crum Decl. Exs. F-G.  Because these were filed after plaintiff initiated this action, the court will disregard these documents.  See Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir. 2006).

1   the second or the third level of review.  The 602 form specified that submission to the next level

2   was the remedy for dissatisfaction with the resolution at the first level.  See ECF No. 87-5 at 3.

3        Defendants contend that plaintiff failed to properly exhaust this appeal and failed to

4   submit any other timely appeal concerning Dr. Salmi's examination.  In support, defendants cite

5   to the record and to the declarations of various prison personnel familiar with the appeals process

6   and plaintiff's appeals.  See Foston Decl. ¶ 6; Gomez Decl. ¶ 7; Walker Decl. ¶ 4; Crum Decl. ¶¶

7   4-5.  The record supports defendants' position.

8        Plaintiff, who admits that he did not submit this appeal to the third level of review,

9   counters that the appeal was never returned to him for further action.  In considering this

10  argument, the court takes notice of the fact that plaintiff was diligent in requesting information

11  from the appeals staff within days of failing to receive a timely response from the first level of

12  review.  See Pl.'s Opp'n, ECF No. 98, at 21.  Yet the court also notes that plaintiff failed to

13  submit any other requests for information regarding this appeal when he allegedly failed to

14  receive any further response.  Plaintiff did not re-file this appeal, did not separately appeal Dr.

15  Salmi's refusal to refer him to a specialist, did not file any other appeal concerning his skin

16  condition until February 13, 2009, and did not mention Dr. Salmi in an appeal again until July 28,

17  2009.

18       Plaintiff next asserts that the appeal was in fact submitted to the third level of review by

19  the defendants' themselves, as evidenced by a stamp that is visible on the appeal form.  See Pl.'s

20  Opp'n at 1-2; Ex. B.  The court has examined this document and notes a received stamp with the

21  initials OTLA-HC[13] dated April 8, 2009 and a completed stamp with the initials OTLA-HC dated

22  April 24, 2009.  See Crum Decl. Ex. C, ECF No. 87-5 at 33.  The circumstances under which

23  these stamps were added to the appeal form are unclear to the court.  That the Office of Third

24  Level Appeals received a copy of the 602 does not mean that the appeal was properly submitted

25  or accepted for review at the third level as required for exhaustion.  It is plain that plaintiff

26  himself did not submit his appeal to each level of review, and he did not set forth any reasons for

27

28  [13] "OTLA-HC" stands for the Office of Third Level Appeals.  See Walker Decl. ¶ 1.

1  seeking further review.  See 602 Appeal Form ("If dissatisfied [with the reviewer's action at the

2  first level of review], explain reasons for requesting a Second Level Review, and submit to

3  institution or Parole Region Appeals Coordinator within 15 days of receipt of response."); Cal.

4  Code Regs. tit. 15, § 3084.6(c) ("An appellant must submit the appeal within 15 working days of

5  the event or decision being appealed, or of receiving an unacceptable lower level appeal

6  decision.").  Administrative exhaustion requires the inmate to properly present his appeal and

7  obtain a ruling at the final available level.  See Woodford v. Ngo, 548 U.S. at 90; Barry v.

8  Ratelle, 985 F. Supp. at 1237.  Mere receipt of the 602 form by the Office of Third Level

9  Appeals, without a request for further review by plaintiff and accordingly without any decision at

10 the final level(s), does not satisfy the exhaustion requirement.

11     Accordingly, the court finds that plaintiff's claims against Dr. Salmi should be dismissed

12 for plaintiff's failure to exhaust administrative remedies.

13                    ii.     NP Kaur

14     Next, defendants argue that some of plaintiff's claims as to NP Kaur should be dismissed

15 because of plaintiff's failure to raise them in the administrative claims process.

16     Plaintiff filed an appeal on July 13, 2009 challenging NP Kaur's July 9, 2009

17 examination, diagnosis, and treatment of a "skin infection."  Plaintiff claimed that he told NP

18 Kaur that he saw dead bugs in his bed, but that Kaur continued to follow the treatment protocol of

19 previous doctors without conducting an adequate examination.  ECF No. 87-6 at 2-8 (Inmate

20 Appeal No. 33-2009-14388).  As previously noted, this appeal was screened out as duplicative of

21 Log No. 08-2492.

22     The Ninth Circuit has concluded that the PLRA does not require exhaustion when

23 circumstances render administrative remedies "effectively unavailable."  Sapp v. Kimbrell, 623

24 F.3d 813, 822 (9th Cir. 2010) (citing Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010)).  In

25 Sapp, the Ninth Circuit held that "improper screening of an inmate's administrative grievances

26 renders administrative remedies 'effectively unavailable' such that exhaustion is not required

27 under the PLRA."  623 F.3d at 823.  As the Ninth Circuit noted, if prison officials screen out an

28 inmate's appeals for improper reasons, the inmate cannot pursue the necessary sequence of

1    appeals, and, as a result, his administrative remedies become unavailable. Id.

2          To fall within this exception to the exhaustion requirement, a prisoner must show he

3    attempted to exhaust his administrative remedies but was thwarted by improper screening. Sapp,

4    623 F.3d at 823. Specifically, the inmate must establish (1) that he actually filed a grievance or

5    grievances that, if pursued through all levels of administrative appeals, would have sufficed to

6    exhaust the claim he seeks to pursue in federal court, and (2) that prison officials screened his

7    grievance or grievances for reasons inconsistent with or unsupported by applicable regulations.

8    Id. at 823-24.

9          In this case, the court finds that both conditions have been met. Plaintiff's appeal of

10   Kaur's July 2009 examination and treatment recommendations would have sufficed to exhaust

11   the claim against Kaur had it proceeded through all levels of administrative review. The appeal

12   did not proceed beyond the screening phase, however, due to a finding by appeals staff that it was

13   duplicative of Log No. 08-2492. That earlier appeal had challenged a distinct medical evaluation

14   in January 2008. Although both appeals included general complaints about the treatment plaintiff

15   had received for his skin condition, they were directed at two different events and two distinct

16   treatment decisions. The court finds that the specifics of these two appeals are distinct from, and

17   thus not duplicative of, each other. For these reasons, the court finds that the screening out of

18   plaintiff's July 13, 2009 appeal was improper. Exhaustion should accordingly be excused as

19   "effectively unavailable." See Sapp, 623 F.3d at 822.

20         Defendants next ask the court to limit plaintiff's claims against NP Kaur to the narrow

21   issue presented in plaintiff's administrative appeal. In the SAC, plaintiff alleges that NP Kaur

22   told plaintiff that she would not treat him for a parasite infestation despite knowing that he had

23   one. While defendants seemingly concede that this claim is exhausted, they ask the court to

24   dismiss the remainder of plaintiff's claims as unexhausted. These allegedly unexhausted claims

25   include the following: (1) NP Kaur intentionally departed from treatment ordered by the

26   dermatologist, (2) NP Kaur erroneously stated that plaintiff refused a medication he was never

27   provided, and (3) NP Kaur denied plaintiff's request for a referral to a specialist. Defendants

28   assert that these claims were not included in plaintiff's appeal regarding Kaur and are therefore

1    unexhausted.

2         A grievance suffices to exhaust a claim if it puts the prison on adequate notice of the

3    problem for which the prisoner seeks redress.  Sapp, 623 F.3d at 824.  "To provide adequate

4    notice, the prisoner need only provide the level of detail required by the prison's regulations."  Id.

5    The California regulations require only that an inmate "'describe the problem and the action

6    requested.'"  Id. (quoting CCR § 3084.2(a).  Thus, a grievance suffices if it alerts the prison to

7    the nature of the wrong for which redress is sought.  Id.

8         Here, the court finds that NP Kaur was put on notice that plaintiff was dissatisfied with

9    her examination and treatment of his skin problem.  Additionally, because the relief sought was

10   treatment by a doctor unaffiliated with the prison, it is fair to say that NP Kaur was also on notice

11   that plaintiff sought referral to a specialist.  Plaintiff's general objection to Kaur's treatment of his

12   condition fairly encompasses the more specific allegations of the SAC regarding departure from a

13   dermatologist's orders and any disputes about what medications plaintiff had or had not tried and

14   why.  See Sapp, 623 F.3d at 824 (appeal of treatment of inmate's eye condition exhausted specific

15   complaints as to treatments provided and denied).

16                         iii.      Byers

17        Finally, the court considers whether plaintiff exhausted his administrative remedies as to

18   defendant Byers.  Based on the allegations in the SAC and the submitted inmate appeals forms, it

19   appears that Byers examined plaintiff prior to Dr. Salmi's May 15, 2008 examination.  See SAC

20   at at 6-7 (alleging that Byers medically cleared plaintiff for double-celling in January 2008

21   despite knowledge of the infestation and following prior consultations with plaintiff about his

22   skin condition); Crum Decl. Ex. E, ECF No. 87-6 at 15.  Plaintiff never submitted an inmate

23   appeal form specifically directed at any act or omission of Byers.  The only inmate appeal that

24   plaintiff submitted in 2008 concerned the general failure of unnamed prison custodial and medical

25   staff to provide appropriate treatment for his skin condition.  See ECF No. 87-5 at 2-4.  This

26   appeal might well have exhausted the claim against Byer had it been pursued through the

27   director's level.  See Sapp, 623 F.3d at 824 (inmate appeal complaining generally about failure to

28   properly treat eye problem exhausted claim as to defendant who was not identified by name in the

17

1   appeal).  However, plaintiff abandoned this appeal following his examination by Dr. Salmi, as

2   described in greater detail above.  Accordingly, plaintiff failed to exhaust the administrative

3   remedies available to him regarding Byers.

4        Three of plaintiff's subsequent 602s mentioned Byers by name, but always in reciting the

5   history of plaintiff's problems getting appropriate treatment for the skin condition.  See ECF No.

6   87-5 (Inmate Appeal No. 33-2009-11051, filed February 13, 2009) at 11; ECF No. 87-6 (Inmate

7   Appeal No. 33-2009-14388, filed July 13, 2009) at 7; ECF No. 87-6 (Inmate Appeal No. 33-

8   2009-14723, filed July 28, 2009) at 15.  None of these appeals were directed at any action of

9   Byers.  Indeed, in arguing that one of these appeals (the February 13, 2009, 602 directed at Dr.

10   Ramen) was not duplicative of his 2008 appeal, plaintiff insisted that he was not appealing the

11   earlier incidents – presumably including Byers' failure to provide appropriate treatment.  See

12   ECF No. 87-5 at 13-14.  Accordingly, these passing references to Byer's past involvement do not

13   affect the exhaustion analysis.

14        Because plaintiff failed to administratively exhaust his claim against Byers, the court finds

15   that plaintiff's claims against this defendant should be dismissed.

16        2.     Screening Pursuant to 28 U.S.C. § 1915

17        For the reasons explained below, the court finds the remainder plaintiff's claims subject to

18   dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.[14]

19        Generally, the court is required to screen complaints brought by prisoners seeking relief

20   against a governmental entity or officer or employee of a governmental entity.  28 U.S.C.

21   § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised

22   claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be

23   granted, or that seek monetary relief from a defendant who is immune from such relief.  28

24   U.S.C. § 1915A(b)(1),(2).

25        The Eighth Amendment's prohibition against cruel and unusual punishment protects

26

27   [14] Because the court finds that dismissal is warranted under the court's screening authority, the
     undersigned declines to consider defendants' arguments that they are entitled to qualified
28   immunity.

18

1   prisoners not only from inhumane methods of punishment but also from inhumane conditions of

2   confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v.

3   Brennan, 511 U.S. 825, 847 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981))

4   (quotation marks omitted).  For claims arising out of medical care in prison, plaintiff "must show

5   (1) a serious medical need by demonstrating that failure to treat [her] condition could result in

6   further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the

7   defendant's response to the need was deliberately indifferent."  Wilhelm v. Rotman, 680 F.3d

8   1113, 1122 (9th Cir. 2012) (citing Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)).

9        Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a

10   prisoner's pain or possible medical need, and (b) harm caused by the indifference."  Wilhelm, 680

11   F.3d at 1122 (citing Jett, 439 F.3d at 1096).  The requisite state of mind is one of subjective

12   recklessness, which entails more than ordinary lack of due care.  Snow v. McDaniel, 681 F.3d

13   978, 985 (9th Cir. 2012) (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

14   Deliberate indifference may be shown "when prison officials deny, delay or intentionally interfere

15   with medical treatment, or it may be shown by the way in which prison physicians provide

16   medical care."  Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096) (internal quotation

17   marks omitted).

18        The court has reviewed plaintiff's claims regarding NP Kaur and finds that plaintiff has

19   sufficiently alleged the elements of an Eighth Amendment claim against her.  However, the court

20   also finds plaintiff's factual allegations to be confusing and inconsistent.  For example, plaintiff

21   claims that he was diagnosed with and treated for a "skin infection" while also claiming that he

22   was diagnosed with and treated for scabies.  Later, plaintiff claims that he was never treated for

23   scabies and that a "skin infection" is not a microscopic infestation.  Plaintiff also fails to specify

24   how and when the dermatologist diagnosed him and what diagnosis was provided.  Finally,

25   plaintiff fails to identify what type of treatment he did receive and when he received it.  Plaintiff

26   acknowledges that confusion has been created due to his lack of medical knowledge.  See Pl.'s

27   Mot. to Appoint Counsel, ECF No. 97.  The complaint's confusion regarding the chronology of

28   events is a more serious defect than plaintiff's lack of medical sophistication.

1    The court has determined that the SAC does not contain a short and plain statement as

2    required by Fed. R. Civ. P. 8(a)(2).  A complaint must contain "a short and plain statement of the

3    claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Each allegation

4    must be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).  A complaint containing the factual

5    elements of a cause of action, but scattered throughout the complaint and not organized into a

6    "short and plain statement of the claim," may be dismissed for failure to satisfy Rule 8(a).

7    Sparling v. Hofman Constr. Co., 864 F.2d 635, 640 (9th Cir. 1988).  A claim must be stated

8    clearly enough to provide each defendant fair opportunity to frame a responsive pleading.

9    McHenry v. Renne, 84 F.3d 1172, 1176 (9th Cir. 1996).  "Something labeled a complaint . . . , yet

10   without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails

11   to perform the essential functions of a complaint."  Id. at 1180.  A complaint that is

12   "argumentative, prolix, replete with redundancy . . . [and] consists largely of immaterial

13   background information" is subject to dismissal.  Id. at 1177.

14       Accordingly, the court finds that the SAC should be dismissed and plaintiff be granted

15   leave to file a third amended complaint against NP Kaur only, setting forth his allegations as

16   clearly and consistently as possible and attaching necessary documentation to the pleading.

17   D.    Plaintiff's Motion to Appoint Counsel

18       Finally, plaintiff has requested the appointment of counsel.  The United States Supreme

19   Court has ruled that district courts lack authority to require counsel to represent indigent prisoners

20   in § 1983 cases.  Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989).  In certain

21   exceptional circumstances, the court may request the voluntary assistance of counsel pursuant to

22   28 U.S.C. § 1915(e)(1).  Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v.

23   Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990).  In the present case, the court does not find

24   the required exceptional circumstances at this time.  Plaintiff's request for the appointment of

25   counsel will therefore be denied.

26   ////

27   ////

28   ////

Based on the foregoing, IT IS HEREBY ORDERED that plaintiff's motion to appoint counsel (ECF No. 97) is denied; and

IT IS HEREBY RECOMMENDED that:

1.  Plaintiff's motion for leave to file surreply (ECF No. 102) be denied;

2.  Defendants' motion to strike unauthorized surreply (ECF No. 101) be granted;

3.  Defendant Byers's joinder (ECF No. 90) be granted;

4.  Defendants' October 1, 2012 motion to dismiss (ECF No. 87) be granted in part;

5.  Defendants Dr. Salmi and Byers be dismissed from this action; and

6.  Plaintiff's second amended complaint be dismissed with leave to amend as to NP Kaur only.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-eight days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 28, 2013

_____/s/_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

/mb;norw2929.mtd

21